The opinion of the judges was stated by
Shaw, C. J.
This, it is believed, is the first case, in which an application has been made to this court, under its general chancery jurisdiction, to issue a writ of ne exeat. In the case of the Commonwealth v. Sumner, 5 Pick. 360, the subject of bail in equity was somewhat discussed; but nothing further was decided, than that upon a bill in equity inserted in the common writ of attachment, then in use, directing in the alternative an attachment of property, or an arrest of the person, the defendant could not be arrested and held to bail in the particular case then before the court. But, whether, under the statute, (St. 1817, c. 87) authorizing the insertion of a bill in equity, in a writ of attachment^ and the service thereof *240 in the same manner as other writs of attachment are served, a defendant in such bill could in any case be arrested, was a question which the court did not undertake to decide, but upon which they expressly reserved themselves ; remarking only that the argument would be very strong in favor of an arrest and holding to bail, notwithstanding the extreme inconvenience of adopting such a procedure, in regard to some of the subjects of equity jurisdiction given by the statute. The question, whether a writ of ne exeat could be granted, was also alluded to, but the case did not call for its decision.
By the revised statutes, passed since the case cited was decided, it is provided, that a suit in equity may be commenced by a subpoena, or the complaint may be inserted in a writ of original summons, with or without an order for an attachment of goods or estate; thus precluding the question alluded to in the case of Commonwealth v. Sumner, whether in any case a defendant in equity might be arrested on the original writ, in which by the statute of 1817 the bill might have been inserted.
It seems, therefore, that the only mode in which the security of bail can be obtained in a suit in equity, is by the writ of ne exeat; and we are strongly inclined to the opinion, that, in a proper case, this court has authority to issue such writ; although a hasty opinion, upon a summary application, and an ex parte hearing, would not be considered as precluding a more deliberate examination of the question, upon a full discussion, whenever the occasion should require it.
Upon the question, in what cases this writ is to be granted, according to the course of practice in chancery, the authorities are somewhat conflicting; and it is not easy, upon a hurried examination, to draw a precise and definite line between the cases in which it will and will not be granted. This difficulty may and probably does arise from the fact, that the question is commonly decided upon a summary application to a judge at chambers, upon an ex parte hearing, and without the time for deliberation usually taken for the decision of important questions.
*241 The general rule of practice to be gathered from the cases, we think, is, that the writ is to be granted only in a case of equitable ascertained debt, to which affidavit can be made with a good degree of certainty; or when it can be shown by or reference to accounts or to other authorized documents, to the reasonable satisfaction of the court, that something in the nature of an ascertainment of a debt has taken place, whereupon a debt arises.
But we think that the writ is not grantable, when the. account is open and unliquidated, although the plaintiff states in his affidavit, that a certain sum is due. Such an allegation, although in terms the statement of a fact, that is, of the defendant’s actual indebtedness, must nevertheless be qualified by the subject-matter to which it relates^ and where it relates to a long unliquidated account, or to facts which are future and contingent, it can amount to nothing more than a strong declaration of a confident expectation or belief, and is not a sufficient ground for issuing the writ, unless it is accompanied and supported by proper accounts or documents.
We are not prepared, at this time, to review the authorities and to state the grounds of our opinion more fully, or to attempt to give a more exact definition of the rule. But, upon a careful consideration of the plaintiff’s bill, and the application founded upon it, and of the affidavits offered to sustain the petition, we are of opinion, that the present is not a case, in which a writ of ne exeat ought to be awarded.
The plaintiffs, on the 2d of November, 1849, having filed a new bill and petition, renewed their application for a writ of ne exeat. The new bill and petition, besides setting forth the facts above stated, referred to an exhibit annexed, which the plaintiffs declared on oath to be a true copy from the books of the firm, and which showed the exact amount of the losses of the firm up to the filing of the bill. The plaintiff's also stated, in their affidavits, that the defendant was bound to contribute one third part of the amount named, at least, as his proportion of the losses, but that the amount, upon a final *242 settlement., would probably be much larger than it then appeared.
I. J. Austin, for the plaintiffs,
proposed to argue : 1st, That the court had jurisdiction of the subject-matter of the bill; 2d, That they had power to issue the writ of ne exeat; 3d, That such writ was a writ of right in a proper case; 4tn, That the present case was a proper one. But the court directing him to confine himself to the third and fourth points, he cited, in support of the third, 2 Story’s Eq. § 1469; Gibert v. Colt, Hopk. 496, 500; 1 Smith, Ch. Prac. 576; Mitchell v. Bunch, 2 Paige, 606; Porter v. Spencer, 2 Johns. Ch. 169. In support of the fourttupoint, he argued that the affidavits were sufficient; and that in matters of account, a positive affidavit of a debt due, and a belief as to the amount, were sufficient to entitle a creditor to the writ; citing Russell v. Ashby, 5 Ves. 96; Mattocks v. Tremain, 3 Johns. Ch. 75; Thorne v. Halsey, 7 Johns. Ch. 189, 192; Boehm v. Wood, Turn. & R. 332; Flack v. Holm, 1 J. & W. 405; Jackson v. Petrie, 10 Ves. 164; Rico v. Gualtier, 3 Atk. 501; Gernon v. Boecaline, 2 Wash. C. C. 130; Gibert v. Colt, Hopk. 496. The only authority to the contrary was 1 Barb. Ch. Prac. 63, in which the cases cited did not sustain the position.
The Court thereupon ordered the writ to issue in the following form: — „
“ Commonwealth of Massachusetts. Suffolk, ss. To the sheriff of our county of Suffolk, or his deputy, greeting. Whereas it is represented to the justices of our supreme judicial court, sitting in equity, on the part of William B. Rice and Ignatius S. Amory, complainants, against Henry W. Hale, defendant, that he, the said defendant, is greatly indebted to the said complainants, and designs quickly to go into other parts beyond this state, (as by oath made on that behalf appears,) which tends to- the great prejudice and damage of the said complainants; therefore, in order to prevent this injustice, we hereby command you, that you do, without delay, cause the «aid Henry W. Hale, to come before you and give sufficient *243 bail, or security, in the sum of four thousand dollars, that he the said Hale, will not go, or attempt to go, into parts beyond the state, without the leave of our said court. And in case the said Hale shall refuse to give such bail or security, then you are to commit him, the said Hale, to the jail in our said county, there to be kept in safe custody, until he shall do it of his own accord. And when you shall have taken such security, you are forthwith to make and return a certificate thereof to our said justices, distinctly and plainly, under your hand, together with this writ. Witness, Lemuel Shaw, Esquire, this second day of November, in the year of our Lord eighteen hundred and forty-nine.” *
*242 This application was heard before the same judges, at chambers, on the 3d of November, 1849.
*243 The defendant, having been arrested and committed to jail, applied to the court to be discharged from imprisonment. The application, in which was embodied the substance of the oath prescribed by the Rev. Sts. c. 98, § 9, for the relief of poor prisoners committed on execution for debt, was sworn to by the defendant, and was argued before the full court, sitting at Salem, November term, 1849.
F. O. Watts, for the defendant.
The court will not allow the defendant to be prejudiced by the proceedings on the ex parte bearing, but will treat the case as if it were now for the first time before them; and will be regulated, in the exercise of their discretion in this case, by proceedings in analogous cases at common law. An arrest in equity on a ne exeat is analogous to an arrest at common law on mesne process. The only purpose of the plaintiffs, in restraining the defendant, must be to enable them to obtain security for the amount alleged to be due to them; and it would be unjust, and against the policy of the laws regulating the relation of debtor and creditor, to allow the defendant on this account to be restrained from leaving the state. The defendant should be considered in the light of a person “ arrested on mesne process,” applying to a magistrate for a discharge under the act of 1844, c. 154.
I. J. Austin, for the plaintiffs.
*244 There is no analogy between this case and the case ol an arrest on mesne process. The case of a ne exeat not being provided for in the general laws, the court will be governed in the matter by the course of proceedings in courts of chancery. Jones v. Boston Mill Corporation, 4 Pick. 507. The case of Brown v. Haff, 5 Paige, 235, in which chancellor Walworth held, that the law of New York, abolishing imprisonment for debt, did not deprive the court of chancery of the power to issue a ne exeat, is decisive to show, that the analogy contended for by the defendant does not exist. It is a mistake to suppose, that to obtain security of the debt is the only reason why the writ should issue. It cannot issue unless a debt is due, but having issued, the defendant will be held to comply with the decree of the court and the justice of the case. Johnson v. Clendenin, 5 Gill & J. 463; 2 Story, Eq. § 1473; Atkinson v. Leonard, 3 Bro. C. C. 218. He may thus be compelled to make a confession, to execute releases and discharges, and to do many things in the progress of the cause, from the benefit of which the plaintiffs will be debarred if he is discharged on this oath. But, admitting that the defendant’s argument is good, the court will carry out the analogy into its details, and before granting this application, will allow the creditors to examine the debtor and file charges of fraud, in the same manner as if he had been arrested at law.
The Court thereupon passed the following order: — “ That William J. Hubbard, Esq., a master in chancery for the county of Suffolk, be and he hereby is appointed to take the examination of said Hale, upon the petition for his discharge from arrest upon a writ of ne exeat, sued out by the plaintiffs in the said county of Suffolk, in the same manner and with the same effect as if he were a debtor offering to take the poor debtor’s oath ; to take the examination in writing upon interrogatories, and report the same to one of the justices of this "court, as soon as may be. Due notice of the time and place of the examination to be given to the solicitor of the plaintiffs.”