## Case No. 5,911.

### In re HALE.

[18 N. B. R. 335.] [1]

District Court, S. D. New York. Oct. 10, 1878.

BANKRUPTCY — PROVISIONAL WARRANT — ARREST —VOLUNTARY PROCEEDING.

1. The bankrupt was adjudicated upon his own petition. He remained in possession of his assets and disposed of a portion of them, and expressed an intention of going to Europe for the purpose of adjusting his foreign accounts, which constituted a considerable portion of his assets. He had expressed an intention of offering a composition, but had presented no application therefor to the court, and declared that his affairs were so confused, especially his foreign accounts, that he was unable to do so. *Held*, that the case was a proper one for a provisional warrant.

2. The bankrupt law [of 1867 (14 Stat. 517)] does not authorize the arrest of the bankrupt in a voluntary proceeding.

[In bankruptcy. In the matter of John M. Hale.]

Edward T. Bartlett, for petitioner.
A. Blumenstiel, for bankrupt.

CHOATE, District Judge. This is an application for a provisional warrant and for a warrant to arrest the bankrupt upon the petition of one of his principal creditors. The bankrupt was adjudicated August 27th, 1878, on his own petition. The warrant as first issued fixed October 10th as the time for the first meeting of creditors. The time was afterwards altered by procurement of the bankrupt's attorney to the 6th of November. The bankrupt is still in possession of his assets, and since the filing of the petition he has disposed of some part of his goods in store, amounting to between three hundred and four hundred dollars. He has expressed an intention of offering a composition, but has not presented any application therefor to the court. He has also expressed an intention of going to Europe for the purpose of adjusting his accounts with his foreign debtors, which constitute a considerable part of his assets. He declares his inability at present to make a proposition for a composition because his affairs, especially these foreign accounts, are so confused, and their availability for the purpose of a composition is so uncertain.

1. As to the provisional warrant, I think the creditor is entitled to have it issue upon the facts of this case, unless he shall accept in lieu thereof an order for the joint custody of the assets by the bankrupt and a custodian named by the petitioners, and for a full inventory to be filed with the clerk, and for

the deposit of all moneys in bank subject to the order of the court. To this the bankrupt makes no objection if the case is held to be a proper one for a warrant, and this arrangement affords a practical security to the creditors without the expenses incident to the issue of a provisional warrant. The violation by the bankrupt of the injunction against disposing of his property, though apparently no fraud was intended, and the delay in the holding of the first meeting and the indefinite postponement of the proposed application for a composition, render it a proper case for taking from the bankrupt the exclusive custody of his assets.

2. The motion for a warrant of arrest must be denied, on the ground that the bankrupt law does not authorize the arrest of the bankrupt in a case of voluntary bankruptcy, and the holding of him in custody or under bail during the pending of the bankruptcy proceedings. The only power to arrest the bankrupt expressly conferred upon the court by the statute is that given in section 5024, which, in certain cases, authorizes the arrest of the alleged bankrupt in an involuntary case, and the holding of him in custody or under bail until the decision of the court upon the petition of the creditors, that is, until the further order of the court. It is at least very doubtful whether, under this section, the power of arrest in an involuntary case extends at all beyond the adjudication, the words "or until its further order" having been held in one case to mean only until such time before the adjudication as the court shall by its further order direct. Usher v. Pease [116 Mass. 440]. The power to arrest, therefore, in any other case, if it exist, must be implied from some other grant of power contained in the statute, or must be implied because it is essential to the proper exercise by the court of the powers granted. Such a power has been strenuously contended for by the learned counsel for the petitioner, but upon a view of all the provisions of the bankrupt law having any bearing on the question, I am satisfied that it was not intended to invest the court with this power. It is obvious that if the power exists at all, it is practically a power to hold the bankrupt in custody or under bail during the entire period that the case in bankruptcy may be pending, which may be for several years, upon proof to the satisfaction of the court that he intends to leave the jurisdiction. It can hardly be doubted that so great a power, practically reviving imprisonment for debt, and touching so seriously the personal liberty of a very large class of citizens, would, if intended to be given, have been given expressly and not left to be inferred merely from the grant of other powers, and that, if given, its exercise would have been carefully limited by the act, to prevent hardship and abuse. The express grant of the power in one case shows that the attention of the framers of the law was called to the subject,.

[1] [Reprinted by permission.]

and they are silent as to all other cases. This raises a presumption of some strength against the existence of the power in other cases. Moreover, in the case of involuntary bankruptcy before adjudication, there are reasons for this remedial process which do not apply after adjudication or in a voluntary case. An involuntary proceeding is one hostile to the debtor and presumably against his will, and based upon prima facie proof of an act of bankruptcy injurious to or a fraud upon his creditors, and until the return of the order to show cause, and the action of the court thereon, the estate of the bankrupt is not so entirely within the control of the court as it is after an adjudication, or as it is at all times in a voluntary case, in which, in the petition itself, the bankrupt submits his property to the jurisdiction and disposition of the court for the purposes of the act. Nor is the bankrupt himself, before adjudication in an involuntary case, to the same degree subject to the orders of the court, or within its power to punish for contempt, as a party to a proceeding before it, as he is in voluntary cases after the filing of the petition. For these reasons it may well have been thought necessary in proper cases where, by evading the jurisdiction. he might defeat the purpose of the act to bring his property within the control of the court, to give a limited power until the hearing and decision upon the petition to hold him in custody to secure his appearance. But, after adjudication and at all times in voluntary cases, the act provides other means of coercing the debtor to do what is required of him under the act. Section 5104 provides that he shall be subject to the orders of the court. He is liable at any time to be put under examination by any creditor, and the power is expressly given to punish any refusal or neglect to obey the orders of the court as for a contempt. Thus it will be seen that the creditors are not remediless.

These are substantial powers of coercion, and in addition to this the bankrupt's right to his discharge will be forfeited if he absconds or fails in any respect to fulfill on his part all the requirements of the act. Although cases may be imagined where there may be a failure of justice and a defeat of the purposes of the act through the absconding of the debtor, yet it may well have been thought that these coercive powers were sufficient for the general enforcement of the act. At any rate, these provisions seem to me to relieve the case from the argument that the power of arrest is essential to the proper exercise by the court of the powers granted by the act. Further support to this conclusion is, I think, to be drawn from general order No. 13, which regulates provisional remedies in voluntary cases, and which provides for the issue of a provisional warrant to seize the property in a voluntary case, but makes no provision for a warrant of arrest in a voluntary case. The act expressly authorizes a provisional warrant only in case of involuntary bankruptcy; but by this general order the supreme court has indicated its opinion that the issue of a provisional warrant, in a voluntary case where the property is in peril, is authorized by implication by the other provisions of the act, and such implication may be fairly drawn from the fact that by the petition the property of the bankrupt is voluntarily subjected to the disposition of the court for the purposes of the act. And the fact that no provision has been made in this or any other general order, for a warrant of arrest in any other case than that expressly provided for in the act, indicates the opinion of the supreme court that no such remedy is available. For these reasons the motion for a warrant of arrest is denied, without critical examination of the circumstances which are claimed to make an arrest proper in this case.