In re COHEN.

(District Court, S. D. Illinois. March 24, 1905.)

BANKRUPTCY—POWERS OF COURT—WRIT OF NE EXEAT.

Bankr. Act July 1, 1898, c. 541, § 2, subd. 15, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], which confers on courts of bankruptcy general powers to make such orders and issue such process as may be necessary for the enforcement of the act, in connection with Rev. St. § 716 [U. S. Comp. St. 1901, p. 580], vests a court of bankruptcy with power to issue a writ in the nature of a writ of ne exeat to restrain a bankrupt within the district where a proper showing of its necessity is made.

In Bankruptcy. Petition for a writ in the nature of a writ of ne exeat.

The petition is supported by affidavit showing that respondent is indebted in the sum of $140,000; that on March 6, 1905, he conveyed his real estate to his wife, his son, and his daughter; that in the months of January, February, and March, 1905, he shipped from his place of business merchandise of the value of more than $70,000; that between February 25th and March 9th he collected in cash $56,000, no part of which was paid to any creditor; and that he is about to leave the district to parts unknown, for the purpose of avoiding the jurisdiction of the court. About two weeks prior to this application respondent was subjected to examination in open court under the provisions of section 9b of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426], and at that time stated that he was insolvent; that he had sold merchandise and made collections to about the amounts stated in petitioners' affidavit; that he had been outside of the district, and had returned with the hope of effecting a settlement with his creditors.

Worthington & Reeves, for petitioners.

Albert Salzenstein and James M. Graham, for respondent.

HUMPHREY, District Judge (after making above statement). This is an application by creditors for an order for a writ in the nature of a writ of ne exeat to restrain the alleged bankrupt from departing the jurisdiction of the court. The respondent had been previously arrested and examined before the court, as provided for in section 9b of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426], and, the 10-days time limit fixed in section 9b being about to expire, this application is urged under the authority of section 2, subd. 15, of the bankrupt law, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], and sections 716, 717, Rev. St. [U. S. Comp. St. 1901, p. 580].

I am of opinion that the facts are amply sufficient to justify the issuance of the writ, if the court has the power. It is objected by respondent that the court is without power to order the writ of ne exeat, except upon satisfactory proof that the respondent is about to depart from the United States; that it would be an unwarranted and arbitrary exercise of power to restrain the respondent from departing out of the jurisdiction of this court, and that no reasonable construction of any federal statute can be held to give such power. Counsel for respondent argue that if the court can confine respondent to the Southern District of Illinois it can confine him to any county thereof, or to any smaller range

of territory, and, if so, to any building, and that this would amount to imprisonment for debt. Unless it be found in the statute, the court has not the power. It is a familiar rule that statutes are to be so construed as fairly and reasonably to carry out the purposes of the legislative body. A study of the bankrupt law shows that the purposes of Congress in its enactment were: First, to allow honest bankrupts to be relieved of their debts by surrendering their property for the benefit of creditors; and, second, to compel dishonest bankrupts to surrender their property for the benefit of creditors. In elaborate detail the act specifies the methods by which the bankrupt may himself carry out the first-named purpose, and also the method by which the creditors applying through the judicial arm of the government may carry out the last-named purpose. Congress contemplated that in many instances skillful men would seek to evade the law, and the act gives the court unusual powers to enforce compliance. Section 2 defines the powers of a court of bankruptcy. In 19 subdivisions it enumerates in detail the necessary judicial powers which the legislative body could anticipate, and, although the court is thus specifically clothed with these numerous powers, subdivision 15 is inserted, in the following words: "Make such orders, issue such process and enter such judgments in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act." Here is a sweeping general delegation of power, evidently intended to supply any omission occurring in the various other subdivisions of the section so far as Congress could legally do so. It is clear that Congress intended by this language to give the court every necessary power. It could not give the power to legislate, or to extend the provisions of the act. No power can be exercised which does not clearly reside in the act. But Congress intended to give, and, in my judgment, the above-quoted language does give, every judicial power known to the law which the court may find necessary for the proper enforcement of the bankrupt act. Is the writ here applied for a judicial power known to the law? Certainly the writ of ne exeat is a judicial power known to the law. If this application conformed strictly to the provisions of section 717, Rev. St., and asked that the respondent be restrained from departing the United States, counsel say they would not object to it; that it would then be quite within the power of the court. Section 716, Rev. St., is intended to give and does give the courts powers in addition to those specifically defined in 717 and other statutes. It gives the power to issue any necessary writ "agreeable to the usages and principles of law." The writ provided for in section 717 is of time-honored usage. Originally it was based upon the principle that the law might require a party to be restrained within the king's realm. Surely it is equally in accordance with the principles of law that the court may for proper cause restrain a party within such territory that the hand of the court may without embarrassment be laid upon him when he is wanted. I think this power is clearly given by section 716, Rev. St., as one of the equity powers of a bank-

ruptcy court, and, if there could be any doubt on that subject, it is removed by the enactment of section 2, subd. 15, of the bankrupt law. Lewis v. Shainwald (C. C.) 48 Fed. 500; In re Lipke (D. C.) 98 Fed. 970.

The writ will issue, and bond is fixed in the sum of $20,000. Upon failure to give bond respondent will be kept in custody by the marshal at the expense of the petitioners, and he will not be imprisoned.