## MURPHY v. PARIS.

(Court of Appeals of District of Columbia. Submitted October 11, 1926. Decided December 6, 1926.)

No. 4427.

1. Courts ⚖444(2)—Supreme Court of District of Columbia in divorce proceeding exercises local and not federal jurisdiction, as affects applicability of statutes authorizing writs of ne exeat (Code D. C. § 68; Judicial Code, § 261 [Comp. St. § 1238]).

The Supreme Court of the District of Columbia in a divorce proceeding is exercising its local and not federal jurisdiction, as affects the application of Code D. C. § 68, and Judicial Code, § 261 (Comp. St. § 1238), relating to the issuance of writs of ne exeat.

2. Ne exeat ⚖14—In summary proceedings, equity court has power, on rule to show cause to declare ne exeat bond forfeited.

Equity court has power, in mere summary proceeding on rule to show cause, to declare ne exeat bond forfeited, and to order penalty of bond paid into court.

Appeal from the Supreme Court of the District of Columbia.

Suit for divorce by Katherine R. Paris against Charles Paris, in which defendant gave a ne exeat bond, with J. J. Murphy as surety. From an order declaring the bond forfeited, and ordering the surety to pay the penalty thereof into the registry of the court, he appeals. Affirmed.

S. McC. Hawken, of Washington, D. C., for appellant.

J. J. O'Brien, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellant, surety on a bond given under a writ of ne exeat, appeals from an order of the Supreme Court of the District of Columbia, in equity, declaring the bond forfeited and ordering the surety to pay the penalty of the bond into the registry of the court.

It appears that one Katherine R. Paris brought suit in January, 1924, against her husband, Charles Paris, for a limited divorce. Shortly thereafter defendant was ordered to pay alimony to the plaintiff. On petition of plaintiff, filed February 24, 1924, a writ of ne exeat was issued requiring the United States marshal for the District of Columbia to take the defendant into custody, and not release him unless he should furnish security in the sum of $500 that he would not depart from the District. Service of the writ was made on June 24, 1924, and on the same day

defendant gave the required bond, with appellant as surety. The condition of the bond, complying with the requirements of the writ, is as follows:

"The condition of the foregoing bond is such that, if the said Charles Paris, the principal in the foregoing bond, shall not go, or attempt to go, beyond or without the District of Columbia, or the jurisdiction of this court, without leave therefrom, then this bond shall be void; otherwise, to remain in full force and effect."

On July 19, 1925, plaintiff petitioned the court to declare the bond forfeited, on the grounds that the defendant was in arrears in payment of alimony, and that he had left the District of Columbia. Appellant appeared in answer to a rule to show cause, and objected to the granting of the prayers of the petition; but on hearing and consideration the court passed the present order, declaring the bond forfeited and requiring appellant, surety thereon, to pay forthwith $500, the penalty named in the bond, into the registry of the court.

Appellant challenges the jurisdiction of the court below to issue the writ, and bases his contention on section 261 of the Judicial Code (Comp. St. § 1238), which provides:

"Writs of ne exeat may be granted by any Justice of the Supreme Court, in cases where they might be granted by the Supreme Court; and by any District Judge, in cases where they might be granted by the District Court of which he is a judge. But no writ of ne exeat shall be granted unless a suit in equity is commenced, and satisfactory proof is made to the court or judge granting the same that the defendant designs quickly to depart from the United States."

[1] There is no allegation in the original bill, nor in the petition for the writ, that the defendant "designs quickly to depart from the United States." This statute, however, applies exclusively to federal courts exercising federal jurisdiction. The Supreme Court of the District of Columbia, in a divorce proceeding, is exercising its local not federal jurisdiction, and the authority upon which, in such a case, it may issue the writ of ne exeat is found in section 68 of the District Code, which provides:

"The said Supreme Court may, in its appropriate special terms, issue writs of quo warranto, mandamus, prohibition, scire facias, certiorari, injunction, prohibitory and mandatory, ne exeat, and all other writs known in common law and equity practice that may be necessary to the effective exercise of its jurisdiction."

Under the Code, a divorce proceeding is within the local jurisdiction of the equity court, and is similar to that exercised under like statutes by state courts; hence the federal statute has no application in this case. The writ, we must assume for the purposes of this appeal, was properly issued by the court in the exercise of its equitable jurisdiction.

[2] It is further contended that the equity court is without power, in a mere summary proceeding on a rule to show cause, to declare the bond forfeited and order the penalty of the bond paid into court. Many of the states have abolished by statute the use of the writ, while in others its enforcement has been held to constitute imprisonment for debt, within the meaning of the constitutional inhibition. In some of the jurisdictions, where there is no statute on the subject, the writ is issued and enforced in accordance with the rules and principles of equity as applied by the British courts.

Ne exeat was originally a high prerogative writ, used for political purposes and issued to restrain a subject from departing from the realm. It was regarded as a prerogative of the king, used to prevent his subjects from leaving the kingdom. The writ was later adopted and used by courts of equity in civil disputes, and, while it is no longer regarded as a prerogative writ, it is the ordinary process of courts of equity through which they may restrain parties from leaving the jurisdiction. The writ as applied by the English courts was more sweeping and of greater significance than has been accorded it by courts of equity in many of the states. It was not only conditioned for the presence of the defendant within the jurisdiction, but his full performance of the orders and decrees of the court.

In most of the states, and it seems to be the practice of the federal courts (Griswold v. Hazard, 141 U. S. 260, 11 S. Ct. 972, 999, 35 L. Ed. 678; In re Appel [C. C. A.] 163 F. 1002, 20 L. R. A. [N. S.] 76), upon forfeiture of the bond by the departure of the defendant from the jurisdiction, a suit at law will lie by the plaintiff to recover on the bond. This is on the theory that the bond is conditioned merely for the presence of the defendant within the jurisdiction of the court, and not for the performance of the decrees of the court. As was said in the Appel Case:

"We recognize that weighty courts have held that, while a bond given to procure the release of one arrested under a writ of ne exeat regno differs from an ordinary bail

bond in requiring the constant presence of the principal within the jurisdiction, yet the chief object of the two obligations is the same, viz. to obtain security that the principal shall abide [not perform] any decree which the court may render against him."

Unquestionably the equity court of the District of Columbia had the power to chancer the bond to the extent of citing the surety to show cause why the bond should not be forfeited, to declare the forfeiture of the bond, and to order the payment of the penal sum into the registry of the court. This seems to be the ordinary practice (though not fully sustained by Stewart v. United States ex rel. Smith, 51 App. D. C. 163, 277 F. 565), as clearly stated in Harris v. Hardy, 3 Hill (N. Y.) 393, where the court defined the procedure as follows: "If the defendant leave the state without permission, an order will be granted directing his sureties to pay the money into court, or, in default thereof, that a suit be brought upon the bond."

It thus appears that, in any view of the proper procedure for the enforcement of the writ, the order appealed from was a proper one. It was clearly within the jurisdiction of the equity court to declare a forfeiture and direct the money to be paid into the registry of the court. It is unnecessary for us, in this appeal, to outline or consider the further procedure or course which should be pursued, in the event of the refusal of the surety to comply with the order and pay the money as directed.

The decree is affirmed, with costs.